The Old National Bank of Evansville *et al. v.* Heckman *et al.*

---

THE OLD NATIONAL BANK OF EVANSVILLE ET AL.
*v.* HECKMAN ET AL.

[No. 18,151. Filed October 12, 1897.]

MORTGAGES.—*When First Mortgage may be Attacked for Fraud by Junior Mortgagee.*—Where a junior mortgage recites that it is subject to a prior mortgage, the mortgagee of such junior mortgage cannot in an action to foreclose assail the prior mortgage as fraudulent; but if the junior mortgagee abandons his mortgage, he may attack the prior mortgage for fraud. *pp. 508, 509.*

FRAUDULENT CONVEYANCE.—*When Creditor Cannot Avail Himself of the Fraud of Debtor.*—A creditor cannot avail himself of a fraudulent conveyance by his debtor where all the property is conveyed to another who assumes the debt. *p. 510, 511.*

PARTNERSHIP.—*May Pay or Secure Bona Fide Debts of Individual Partners.*—Partners may waive the right to compel partnership assets to be first applied to the payment of partnership debts, and they may transfer or incumber the firm property to pay or secure *bona fide* debts of the individual members of the firm, and the transaction cannot be successfully attacked, either by a creditor or a receiver appointed by reason of the insolvency of the firm. *pp. 511, 512.*

SPECIAL FINDINGS.—*Conclusions of Law Improperly Stated Among Facts Found.*—The conclusions of law stated among the facts found are void and amount to nothing. *p. 512.*

From the Vanderburgh Superior Court. *Reversed.*

*Alex. Gilchrist, C. A. De Bruler* and *C. L. Wedding,* for appellants.

*John Brownlee* and *P. W. Frey,* for appellees.

McCABE, C. J.—This suit was brought by the appellees Rosine Heckman, Elizabeth Weinheimer, Rose Kreipke and Philip W. Frey, against the appellant,

The Old National Bank of Evansville *et al. v.* Heckman *et al.*

The Old National Bank of Evansville, and against the appellee, The Indiana Pottery Company, to foreclose a mortgage given by the Indiana Pottery Company to the other appellees.

The issues formed were tried by the court, resulting in special finding of the facts on which the court stated its conclusions of law favorable to the appellees, and rendered judgment accordingly.

The substance of the special finding is as follows: The plaintiffs, Rose Kreipke and Elizabeth Weinheimer, are both daughters of the plaintiff Rosine Heckman, and are the wives of William Kreipke and Louis Weinheimer respectively. Prior to the year 1892, the plaintiff, Rose Kreipke, loaned said William Kreipke the sum of $1,650.00, and afterwards she loaned him the further sum of $1,350.00, and took his note for the sum of $3,000.00; that with the proceeds of said loan he purchased real estate on Main street in the city of Evansville; that he afterwards sold said real estate, and with the proceeds of said sale he purchased stock in the Uhl Pottery Company; that the plaintiff, Elizabeth Weinheimer, in 1888 loaned Louis Weinheimer, her husband, the sum of $1,600.00 and took his note for that amount; that he purchased stock in the Old National Bank with the proceeds of said loan, and that afterwards he sold said bank stock, and with the proceeds of such sale he purchased stock in the Uhl Pottery Company; that at the time of said purchase he borrowed from the plaintiff, Elizabeth Weinheimer, the further sum of $1,400.00, and with the proceeds of said loan purchased stock in the Uhl Pottery Company; that at the time he borrowed said sum of $1,400.00 from her, he took up the note for $1,600.00 and gave her his note for $3,000.00. No part of either of these sums have been paid by the said Kreipke and Weinheimer to their wives. After

giving the note for $3,000.00, and while he was solvent, said Kreipke built a house for the plaintiff, Rose Kreipke, on her real estate, at the cost of $1,200.00, which he donated to her.

On and before the 25th of December, 1893, the Uhl Pottery Company was a corporation organized under the statutes of this State providing for the incorporation of manufacturing and mining companies. It had an authorized capital of $25,000.00. It was organized in 1891, and its term of existence was ten years, its place of business was Evansville, and its object of formation, as stated in its articles of association, was the manufacture and sale of pottery and similar goods. At the date above mentioned it had but three stockholders, namely: Louis Weinheimer, William H. Kreipke and one Arthur W. Blackman, said Weinheimer and Kreipke having each stock in said company of the par value of $5,000.00, and said Blackman having stock in said company of the par value of $1,000.00, which he at the time of the conveyance next mentioned sold to said Weinheimer and Kreipke for $250.00. The only directors of said company at said date were said Louis Weinheimer, William H. Kreipke and said Blackman.

On said 23d day of December, 1893, a conveyance was made of all the property of the Uhl Pottery Company to said Louis Weinheimer and William H. Kreipke. Said deed was made in the name of the Uhl Pottery Company, and was executed by said Kreipke as president of said company, and by said Weinheimer as secretary of said company, to themselves as individuals. At once upon the transfer of all property of the Uhl Pottery Company to themselves, as hereinbefore stated, said Weinheimer and Kreipke began and continued the same kind of business that said Uhl Pottery Company had been engaged in as partners, under

the name of The Indiana Pottery Company, using in said business the plant and all other property of said Uhl Pottery Company. Shortly after said 23d day of December, 1893, said firm of Weinheimer and Kreipke, by the name of The Indiana Pottery Company, assumed the said indebtedness of the individual members of said firm to their wives, and gave a note of said firm to the plaintiff, Elizabeth Weinheimer, of $3,000.00, and to the plaintiff, Rose Kreipke, of $3,000.00. Neither said Uhl Pottery Company, nor said firm of Weinheimer and Kreipke at said time, nor at any other time, were indebted to either of said plaintiffs in any sum whatever, and the only consideration for the assumption of said indebtedness and the giving of their said notes was the fact, as herein stated, that each of said husbands owed his wife. Said Weinheimer and Kreipke conducted said business under said name of The Indiana Pottery Company until the 3d day of October, 1894, when they, with their brother-in-law, Louis Heckman, filed articles of association under the law providing for the incorporation of manufacturing and mining companies, and formed a corporation under the same name of The Indiana Pottery Company with a capital stock of $25,000.00, and term of existence of fifty years, with their place of business at Evansville, Indiana, and to carry on the same kind of business as had been carried on by said Uhl Pottery Company. There were but three incorporators, namely: said Louis Weinheimer, William H. Kreipke and Louis Heckman, said Weinheimer and Kreipke taking each one hundred shares of $50.00 each of the capital stock of said new corporation, and said Louis Heckman one share, said individuals being the sole stockholders and only directors of said company. At once upon the organization of said company, said Louis Weinheimer and William Kreipke

made a deed to said new company, in which their wives joined, of all the real estate which had been transferred from said Uhl Pottery Company to said Weinheimer and Kreipke, including the plant of said Uhl Pottery Company; and they also made a bill of sale to said new corporation of all the other assets of said firm of Weinheimer and Kreipke, which included all they had received from said Uhl Pottery Company.

Said Weinheimer and Kreipke, upon such conveyance and transfer, caused said Indiana Pottery Company to enter on its minutes an agreement to assume the debts of said Weinheimer and Kreipke and they caused said Indiana Pottery Company, as a corporation, to execute and deliver to the said Elizabeth Weinheimer and to said Rose Kreipke, each of them, a note for $3,000.00 in lieu of the notes of said Weinheimer and Kreipke held by said plaintiffs, which were by the said plaintiffs surrendered to the said Weinheimer and Kreipke; at the same time said Weinheimer and Kreipke caused said corporation, The Indiana Pottery Company, to execute and deliver to the plaintiff, Rosine Heckman, a note for $6,000.00 which note, as hereinafter shown, was without consideration, except for the sum of $2,000.00.

Said Weinheimer and Kreipke, and said Louis Heckman, paid nothing for the stock so taken by them in said new corporation, except by the transfer of said plant and other property to said corporation; that on September 27th, 1894, said firm of Weinheimer and Kreipke, doing business under the name of the Indiana Pottery Company, borrowed from the plaintiff, Rosine Heckman, the sum of $2,000.00; that on said last mentioned date the said firm executed and delivered to the plaintiff Rosine Heckman its note for the sum of $6,000.00; that said note was without consideration, except the sum of $2,000.00 borrowed as

aforesaid. On April 20, 1895, the defendant, The Old National Bank, recovered a judgment in the Vanderburgh Superior Court for $10,302.03 against said Indiana Pottery Company, and against said Louis Weinheimer and William H. Kreipke, who were makers with the Indiana Pottery Company of the notes on which said judgment was recovered; that execution was thereafter issued on said judgment to the sheriff of Vanderburgh county, the residence of each of the defendants in said judgment, and said execution was thereafter returned wholly unsatisfied. Neither at said date, nor at any time, was there any property out of which said judgment could be made, except the property included in the mortgage to plaintiffs, and said judgment is wholly unpaid, and there is now due thereon the sum of $11,062.40.

On April 20, 1895, defendant, David Ingle, recovered a judgment in said court for $361.80 against said Indiana Pottery Company, which is wholly unpaid. Execution was thereafter issued to said sheriff of Vanderburgh county upon said judgment, and was returned wholly unsatisfied, for the reason that there was no property out of which to make the same except the property included in plaintiffs' mortgage. The debt upon which said last named judgment was recovered was created after the transfer of the property of the Uhl Pottery Company to said Weinheimer and Kreipke, and that there is now due thereon the sum of $388.20. At the time the mortgage was made to the plaintiffs the Indiana Pottery Company was insolvent. The value of its assets at said time was not to exceed $12,000.00, and if the notes of said company given to the plaintiffs were valid, the debts were more than $21,000.00. At the time the corporation, The Indiana Pottery Company was organized; if the alleged debts of Weinheimer and Kreipke to the plaintiffs are

counted as valid debts, said Weinheimer and Kreipke were insolvent, and the property transferred to the new corporation was not sufficient to pay the debts of Weinheimer and Kreipke assumed by it. At the time the property of the Uhl Pottery Company was transferred to Weinheimer and Kreipke, as hereinbefore stated, the Uhl Pottery Company had property enough to pay the debts of said company, but the assumption of the debts of Weinheimer and Kreipke to their wives made that property insufficient to pay the debts to which it was made subject, and caused said firm of Weinheimer and Kreipke to become insolvent.

Of the debt upon which the judgment of the Old National Bank was recovered, $7,200.00 was the debt of the Uhl Pottery Company, existing on December 23, 1893, and $2,500.00 of the same was created by Weinheimer and Kreipke after the transfer of the property of the Uhl Pottery Company to them. The notes of the Uhl Pottery Company, amounting in the aggregate to $7,200.00, were renewed by Weinheimer and Kreipke under their firm name of The Indiana Pottery Company as they respectively came due, and were renewed in the same name down to the time of the making of the plaintiffs' mortgage. At the time said notes were renewed, and at the time such new notes for new debts were made, said Old National Bank had no notice or knowledge that said Weinheimer and Kreipke, as a firm or as a corporation, had assumed the debts of said persons to their wives, and had no notice or knowledge that either Weinheimer or Kreipke owed such debts; but at said time, and at the time said new loans were made, it was done on the assurance of said Weinheimer and Kreipke to said Old National Bank that they, said Weinheimer and Kreipke, owed no other debts than the amount owing to said Old National Bank, and the fact of any other

indebtedness was concealed from said Old National Bank by the said Weinheimer and Kreipke. On the 16th day of October, 1894, the defendant, the Indiana Pottery Company, assumed the indebtedness of the firm of Weinheimer and Kreipke and executed to the plaintiff, Elizabeth Weinheimer, a note for $3,000.00, and to the plaintiff, Rose Kreipke, a note for $3,000.00, and to the plaintiff, Rosine Heckman, a note for $6,000.00. Said notes are the ones, copies of which are filed as exhibits with the complaint.

On February 9, 1895, said company executed and delivered to the plaintiff, Philip W. Frey, a note for $500.00 for the indebtedness then due him from said defendant; that for the purpose of securing said notes, said Indiana Pottery Company, on February 9, 1895, executed and delivered to the plaintiffs the mortgage, a copy of which is filed with the complaint, thereby mortgaging to the plaintiffs all its property; that the plaintiffs caused said mortgage to be recorded in the mortgage records of the recorder's office of Vanderburgh county, of which said Indiana Pottery Company is and was at said time a resident, on February 11, 1895; that plaintiffs, upon securing said mortgage, immediately took possession under the same of all the property described therein, and retained possession thereof until the court, upon application of the defendant, the Old National Bank, appointed James W. Lauer receiver thereof, since which time said property has remained in the possession of said receiver; that on February 14, 1895, the defendant, The Indiana Pottery Company, for the purpose of securing said debt due from it to the defendant, the Old National Bank, executed and delivered to the bank a mortgage upon the same property theretofore mortgaged by it to the plaintiffs herein, and said mortgage contained the

following language, namely: "Subject to the mortgage heretofore given to Rosine Heckman and others, which is duly recorded. It being the intention of this instrument to convey to the said mortgagee by way of mortgage all of the property of said Indiana Pottery Company, real and personal, of whatsoever kind of which they may be possessed, subject to the mortgage above described;" that the defendant, the Old National Bank, accepted said mortgage, and caused same to be recorded in the record of mortgages in the recorder's office of Vanderburgh county, Indiana, on the 18th day of April, 1895; that at the time the defendant, said bank, accepted said mortgage it had notice of the existence of plaintiff's mortgage; that the complaint in this action was filed, summons issued and served on the defendant, the Old National Bank, on April 9, 1895; that on April 20, 1895, the defendant, the Old National Bank, in another action in this court against the said Indiana Pottery Company, for the same debt, and upon the same note secured by its said mortgage, obtained a judgment for the sum of $10,302.03 against the said Indiana Pottery Company, and that said judgment remains unsatisfied; that the first paragraph of said defendant's answer and cross-complaint asking for the foreclosure of its said mortgage in this action remained on file as a part of its pleadings herein until the beginning of the trial, and part of the evidence had been heard, at which time, by leave of court, the said defendant was permitted, over the objection of the plaintiffs, to dismiss its said answer and cross-complaint theretofore filed herein; that at the time of the filing of its said first paragaph of cross-complaint said Old National Bank had knowledge of all the facts in these findings stated, and alleged therein that the said mortgage to plaintiffs was fraudulent as against it, and prayed that the lien of its

mortgage be declared superior to the lien of the plaintiffs' mortgage. Said mortgage to said National bank included both real estate and personal property, and was upon the same property as that included in the plaintiffs' mortgage. Said mortgage was executed on the 14th day of February, 1895, and was delivered to and accepted by the defendant, the Old National Bank, but was not put on record until April 18, 1895. Said defendant upon the trial of this action dismissed its first paragraph of cross-complaint, and before the answer of the plaintiffs to the second paragraph of the cross-complaint of the defendant, the Old National Bank, which sets up that the Old National Bank is estopped from asserting that the mortgage to the plaintiffs, or any of them, is fraudulent was filed, abandoned in open court all claim to said mortgage to the Old National Bank, and offered to satisfy and cancel said mortgage by its judgment, and consent to distribute the proceeds of the Indiana Pottery Company, which now or hereafter may be realized from the mortgaged property of said company, among the *bona fide* creditors of said Indiana Pottery Company without reference to said mortgage to said Old National Bank, and the said Old National Bank then stated by its counsel that it neither asks nor seeks, in this action or otherwise, any advantage or benefit from such mortgage; that on January 5, 1895, the defendant, the Indiana Pottery Company, paid to the plaintiff, Rosine Heckman, the sum of $120.00, to the plaintiff, Elizabeth Weinheimer, the sum of $60.00 and to the plaintiff, Rose Kreipke, the sum of $60.00; that on January 12, 1895, said defendant paid to the plaintiff, Elizabeth Weinheimer, $425.00, and to the plaintiff, Rose Kreipke, $425.00; that on January 28, 1895, the said defendant paid to the plaintiff, Rose Heckman, the sum of $365.00; that on and before the 24th day

of December, 1894, the defendant pottery company paid to the plaintiff, Rosine Heckman, the sum of $2,000.00; that on the 9th day of February, 1895, the defendant pottery company paid to the plaintiff, Philip W. Frey, the sum of $250.00; that said amounts were paid by the said defendant upon the notes hereinbefore mentioned; that upon the issue between the defendant, David Ingle, and the defendant, The Indiana Pottery Company, and the plaintiff, Rosine Heckman the court finds that the note given by the said defendant pottery company to the plaintiff, Rosine Heckman, on the 16th day of October, 1890, as hereinbefore set out was made with the fraudulent intent and purpose to cheat, hinder and delay the said defendant, David Ingle, in the collection of the indebtedness of the said Indiana Pottery Company to him; and as between said parties, the court finds that the mortgage to said plaintiff was given with the same intent, all with the knowledge and consent of the said plaintiff, Rosine Heckman. And the court further finds that, as between said parties, the payment of the sum of $120.00 by the Indiana Pottery Company to the said Rosine Heckman was paid to her without any consideration and with the intention to cheat, hinder and delay the creditors of the said Indiana Pottery Company in the collection of their claims; that there is now due the plaintiff, Philip W. Frey, upon his note and mortgage, described in the complaint herein, principal and interest, the sum of $276.86, and $27.68 attorney's fees, making the total amount due him, $304.54; and that the same, by virtue of said mortgage, is a lien upon the property described in said mortgage, superior to the liens of his co-plaintiffs, and the judgment and mortgage liens of the defendants herein; that as between the defendant, the Old National Bank, and the plaintiff, Rosine Heck-

man, and the defendant, The Indiana Pottery Company, there is now due the plaintiff, Rosine Heckman, upon her note and mortgage described in the complaint herein, the sum of $4,587.20, principal and interest, and $228.35 attorney's fees, making a total amount due her, as between said parties, of $4,815.55; and that the same, by virtue of said mortgage, as between said parties, is a lien upon the property described therein, subject to the liens of her co-plaintiffs, Rose Kreipke and Elizabeth Weinheimer, and Philip W. Frey, and the defendant, David Ingle, and superior to the judgment and mortgage lien of the defendant, The Old National Bank; that there is now due the plaintiff, Rose Kreipke, upon her note and the mortgage described in the complaint herein, the sum of $2,476.66, principal and interest, and $152.80 attorney's fees, making the total sum due her $2,629.46; and that the same, by virtue of said mortgage, is a lien upon the property described therein, equal to the lien of her co-plaintiff, Elizabeth Weinheimer, and superior to the judgment and mortgage liens of the defendants; that there is now due the plaintiff, Elizabeth Wenheimer, upon her note and the mortgage described in the complaint herein, the sum of $2,476.66, principal and interest, and $152.80 attorney's fees, making a total amount due her of $2,629.46; and that the same, by virtue of said mortgage, is a lien upon the property described therein equal to the lien of her co-plaintiff, Rose Kreipke, and superior to the judgment and mortgage liens of the defendants.

And the court states the following conclusions of law:

"1st.   That the plaintiff, Philip W. Frey, ought to recover from the defendant, The Indiana Pottery Company, upon the note, a copy of which is filed with the complaint, the sum of $304.54, together with his costs,

to be levied and collected without relief from valuation and appraisement laws; and that said sum is secured by the mortgage, a copy of which is filed with the complaint, and is a valid and subsisting lien upon the property therein described superior to all liens of all parties to this action.

"2d. That the plaintiffs, Elizabeth Weinheimer and Rose Kreipke, ought severally to recover of and from the defendant, The Indiana Pottery Company, upon the notes executed to them, copies of which are filed with the complaint, each, the sum of $2,629.46, together with their costs, to be levied and collected without relief from valuation and appraisement laws; and that said sums are each severally secured by the mortgage filed with the complaint, and are each valid and subsisting liens equal in priority to each other, upon the property therein described, subject to the lien in favor of the plaintiff, Philip W. Frey, and superior to the liens of all other parties to the record herein.

"3d. That the defendant, Old National Bank, by the acceptance of the mortgage executed to said defendant, The Indiana Pottery Company, hereinbefore in the findings of fact described, and with knowledge of the facts in these findings hereinbefore set out, and proceeding in this court to foreclose the said mortgage and have it declared a lien superior to that of the mortgage executed to the plaintiffs herein by reason of and under a cross-complaint setting up the facts in these findings hereinbefore set out, is estopped from setting up the invalidity in whole or in part of the mortgage to the plaintiffs, and the rights of the said defendant, Old National Bank, must be held subject to the rights of the plaintiffs under the mortgage set out in their complaint.

"4th. That the mortgage filed with the complaint

herein is fraudulent and void as between the plaintiff, Rosine Heckman, and the defendant, David Ingle; and the lien of the judgment defendant, David Ingle, is superior to any lien or claim of the plaintiff, Rosine Heckman.

"5th. That as between the plaintiff, Rosine Heckman, and the defendant, The Indiana Pottery Company, and the defendant, The Old National Bank, the plaintiff, Rosine Heckman, ought to recover of and from the defendant, The Indiana Pottery Company, the sum of $4,815.55, together with her costs herein, to be levied and collected without relief from valuation and appraisement laws; and that the same is, by virtue of said mortgage, as between the said parties, a valid and subsisting lien upon the property described therein, subject to the liens of her co-plaintiffs, Philip W. Frey, Rose Kreipke and Elizabeth Weinheimer, and the defendant, David Ingle, and superior to the judgment and mortgage lien of the defendant, The Old National Bank.

"6th. That by virtue of his judgment and execution aforesaid, the defendant, David Ingle, has a lien upon the property described in the mortgage filed with the plaintiffs' complaint in the sum of $380.20; that by virtue of its judgment and execution aforesaid the defendant, The Old National Bank, has a lien upon the property described in the mortgage filed with the plaintiffs' complaint in the sum of $11,062.40.

"7th. That the mortgage set forth in the plaintiffs' complaint ought to be foreclosed, and that the equity of redemption of each and all of the defendants in and to the mortgaged property, and all persons claiming under and through them, ought to be forever barred and foreclosed; and that the real estate and personal property in said mortgage described ought to be sold as other lands and personal property are sold upon

execution; and that the proceeds of said sale ought to be applied, *first*, to the payment of the costs of such sale, and the costs of this action; *second*, to the payment of the amount due the plaintiff, Philip W. Frey, as hereinbefore found; *third*, to the payment of the amount due the plaintiff, Rose Kreipke, and the plaintiff, Elizabeth Weinheimer, as heretofore found; and if there is not a sufficient sum realized from such sale to pay said amounts in full, then, and in that event, to apply the same *pro rata* on the respective amounts due them; *fourth*, to the payment of the judgment in favor of David Ingle, as hereinbefore set out, with interest thereon from the date thereof; *fifth*, to the payment of the amount due plaintiff, Rosine Heckman, as hereinbefore found; *sixth*, to the payment of the judgment in favor of the Old National Bank, as hereinbefore set out, together with interest thereon from the date thereof."

The principal question arises over the correctness of the third conclusion of law, and so much of other conclusions as involve the same question, namely: that the appellant, the Old National Bank, by the acceptance of the mortgage to it, by The Indiana Pottery Company, with the recital therein that such mortgage was subject to the provisions of the mortgage to appellee, Rosine Heckman, and others on the same property, securing to said Rosine $6,000.00, estopped the bank from setting up the invalidity of said mortgage, making the rights of the bank subject to the rights of the plaintiffs under the mortgage set out in the complaint, including the $6,000.00 secured thereby to Rosine Heckman.

In support of this conclusion of law we are referred to *Muncie National Bank* v. *Brown*, 112 Ind. 474, and *Anderson* v. *Oskamp*, 10 Ind. App. 166.

The case above cited from this court in 112 Ind., as

to the mortgages involved, was very much like the present. While this court there held that the bank, the second mortgagee, could not assail the first mortgage for fraud, yet it did not hold that there was any estoppel in the case. All that was there said as to this point was as follows: "The trial court sustained the motion of the appellee to strike out all evidence tending to prove that the mortgage executed to the appellee was fraudulent. The Muncie National Bank is not in a situation to complain of this ruling, for in the mortgage which it accepted, that executed to the appellee, is recognized as valid. It is recited in the former mortgage that 'It is expressly stipulated herein that this mortgage is made second and subsequent to that of one executed to Cornelia A. Brown and John C. Jenners to secure the payment of certain of the indebtedness of the said Francis M. Brown to them and each of them, as described in said mortgage.' Having treated the mortgage as a valid one, the bank cannot be allowed to assail it on the ground that it was made with the intent to defraud creditors."

Cornelia A. Brown brought suit to foreclose her mortgage and the Muncie National Bank filed a cross-complaint and sought to foreclose its mortgage against Mrs. Brown and to secure priority over Mrs. Brown's prior mortgage, and introduced evidence tending to prove that her mortgage was void because it was given to defraud the creditors of her husband, the mortgagor.

It was held that her mortgage could not be thus assailed by the bank in an effort to foreclose its own mortgage, so as to give it priority over the first mortgage, even though such first mortgage was fraudulent and void as against creditors. To the same effect is the case of *Anderson* v. *Oskamp, supra.*

These decisions, at first blush, seem to be wrong,

but neither of them rest upon the ground of estoppel. They rest strictly on the contractual relation created by the second mortgage. It must be observed that neither of them rest the ruling upon the rights which spring out of the relation of creditor and debtor; indeed, no such relation is disclosed outside of the contract expressed in the mortgage involved in each case. In each of these cases it was sought to secure a right to the second mortgagee which he did not possess as a creditor of the maker of the alleged fraudulent mortgage, but which he acquired wholly and solely by virtue of the terms of his contract as expressed in his second mortgage, and that was a specific lien upon certain property.

It is no injustice and no hardship to limit such a person to the express terms of the contract upon which he sues. It is no answer to this position for him to say as the appellant bank did in the case now before us, that had he known that the first mortgage was fraudulent and void as against creditors, he would not have accepted the second mortgage with the stipulation that it was to be subject to such first mortgage. The refusal to so accept would not have bettered the condition of the person so refusing. The mortgagor was not bound to execute any mortgage whatever. It takes two contracting parties to make that contract, the same as any other. If the mortgagor could not obtain the terms to be inserted in the contract of mortgage which he demanded, he had a right to decline to enter into it, the same as the mortgagee had a right to decline to receive it if its terms did not suit him.

But it may be said that as appellant bank was ignorant of the fraud in the first mortgage when it accepted the second with the stipulation mentioned therein, it ought to be allowed in foreclosing its own

mortgage to show such fraud to the overthrow of the first mortgage, because it is axiomatic that fraud vitiates and paralyzes everything it permeates. That would be true in any proper proceeding to avoid or set aside any contract or mortgage for fraud. But the appellant bank was not seeking to set aside its own mortgage for fraud or anything else. It was seeking, so long as the first paragraph of its cross-complaint remained undismissed, to enforce its mortgage by foreclosing it. But that is not all it was seeking to do; it was seeking to enlarge the terms and conditions of its own mortgage contract by proving fraud against the first mortgage. Fraud may furnish means to avoid one contract, but not to enlarge the terms of another, which would amount to the court making a new contract for the parties which they never made for themselves. In *Anderson* v. *Oskamp, supra,* Gavin, J., speaking for our Appellate Court, very aptly and forcibly observes: "We are unable to see any great inequity in the enforcement of the rule which holds the appellees bound by the provisions of the instrument under which they assert their rights. They are not claiming here their right as creditors merely to subject the property fraudulently conveyed to the payment of their debt by the ordinary process of law, but they assert a contract right, claiming under the mortgagor, and superior to the position of creditors standing on their rights as creditors. By this contract right they sought and obtained a preference over all the other unsecured creditors. If they are not permitted to dispute the validity of the first mortgage, they are deprived of nothing which they expected to obtain. Their mortgage only purports to give them a lien second to appellant's mortgage. They received exactly what they contracted for. Their debtor offered them certain security. They accepted it, thus obtain-

ing a preference over the other creditors. Their position is clearly distinguishable from that of the grantee, who obtains relief from his assumption of a mortgage upon the ground of fraud in the transaction with himself affecting the consideration moving to him.

"The distinction between appellees' rights as creditors to set aside the fraudulent mortgage by proper procedure, and their right to maintain their lien as mortgagees, is clearly made in the case of *Tolbert* v. *Horton*, 31 Minn. 518, 18 N. W. 647, wherein a junior mortgagee sought to avoid as fraudulent a prior mortgage to which his was, by its terms, made subject." That court held that it could not be done. To the same effect are 2 Cobbey, Mortgages, section 1039, and authorities there cited, and *Stevens* v. *McMillin*, 37 Minn. 509, 35 N. W. 372.

In 2 Cobbey on Mort., *supra,* it is said: "Priority of the second mortgage, as between the two, can never be obtained except upon an agreement of the parties. Such stipulation runs with the mortgage, and, whether it is on file or off, it always tells the same story to all persons whose interests require its perusal. It is a stipulation binding upon the parties, showing how the mortgaged property is to be regarded, and continues so long as the mortgage continues."

Thus it will be seen that the cases involving the question now under consideration do not rest upon the doctrine of estoppel in a strict legal or technical sense, though some of the authorities referred to say that the second mortgagee is estopped to deny the validity of the first mortgage. But it is apparent that they all rest upon the principle that a party seeking to enforce a contract in his favor must be bound and limited in his relief thereunder to the terms and stipulations of the contract.

But this principle has no application whatever

where a party to such a contract is seeking relief upon his rights as a common creditor independent of the contract of mortgage.

When a person takes a mortgage to secure the payment of a debt due him, in contemplation of law such mortgage is for the sole benefit of the mortgagee. His failure to enforce it cannot injure or deprive the mortgagor of any of his rights; hence, the mortgagee may abandon his mortgage and all rights therein secured to him, and the mortgagor has no right to complain of such abandonment.

Therefore, when the appellant bank dismissed the first paragraph of its cross-complaint setting up its second mortgage for foreclosure, seeking priority over the first mortgage, and in open court abandoned all rights secured to it by said mortgage, and offered to cancel the same, and relied wholly upon its judgment for the amount of the notes embraced in said mortgage, and relied wholly upon its second paragraph of cross-complaint setting up said judgment and seeking to avoid the first mortgage for fraud, it relieved itself entirely from the effect of the recital contained in its said abandoned mortgage. Therefore, the superior court erred in its conclusions of law holding that such recital in said mortgage estopped the bank in any form of action from attacking the first mortgage.

In its second paragraph of its cross-complaint the bank relied solely upon its rights as a common unsecured creditor, as evidenced by its judgment. And the findings of fact and other conclusions of law correctly show that the first mortgage, in so far as it secured $6,000.00 to appellee, Rosine Heckman, was fraudulent and void as against creditors generally, and that appellant was one of such creditors.

We therefore conclude that the superior court erred

in its conclusions of law that Rosine Heckman should recover anything as against the appellant, the Old National Bank, and that, on the contrary, it ought to have concluded as a matter of law, that said Rosine ought not to recover anything as against said bank, for the reason that all of the mortgage as to her, except the amount of $2,000.00, was fraudulent and void as to said bank, and that said $2,000.00 had been paid.

It is also contended by the appellant bank that the conclusions of law are wrong because they do not hold the first mortgage void as to Elizabeth Weinheimer and Rose Kreipke. This result is sought on the ground that there was no consideration for the mortgage as to them.

The theory of the second paragraph of cross-complaint is that the conveyance of all of the property of the old corporation, The Uhl Pottery Company, to Lewis Weinheimer and William H. Kreipke, the owners of all its capital stock except a nominal amount, was made in fraud of the rights of creditors of the old corporation. But the allegations of the cross-complaint are not sufficient, even if the special findings were, to make a fraudulent conveyance, the only allegation being, "conveyed to said Weinheimer and Kreipke  *  *  *  all the property of said Uhl Pottery Company  *  *  *  for the purpose of defrauding the creditors of said Uhl Pottery Company." But even if the allegations of the cross-complaint and the facts found were sufficient to make that conveyance fraudulent and void as against the creditors of the Uhl Pottery Company, it is difficult, if not impossible, to see how that could harm the appellant bank. The same property was afterwards conveyed to the new corporation, and it assumed the payment of so much of the bank's present claim as had been created by the old corporation, and for it and the balance of said

claim created by the new corporation, the said new corporation gave its notes to the bank, which it reduced to judgment, and which judgement forms the basis of its present claim. Thus, it is seen that the bank is in just as good a condition as if the supposed fraudulent conveyance had never been made. Such a conveyance furnishes no cause of action.

The only allegation made in the second paragraph of the cross-complaint against the validity of the mortgage as to Rose Kreipke and Elizabeth Weinheimer is that the same was wholly without consideration, and was made solely for the purpose of defrauding the creditors of the Indiana Pottery Company.

The facts found show that the consideration for the notes of said Elizabeth and Rose was money to the full amount loaned by each of them to their husbands respectively. That when the old corporation was dissolved or abandoned, and all its property being vested in Weinheimer and Kreipke, they formed a partnership under the firm name of The Indiana Pottery Company, and that while such partnership was in existence, by agreement of both partners, they being all of the firm, such firm, in consideration of the surrender of the individual note of each partner, held by each of the wives of the partners, namely: said Rose and Elizabeth, said firm executed its notes to each of said wives for the same amount of the note surrendered by each of them. When the new corporation of the same name as the said partnership was organized, said partnership conveyed all its property to said new corporation, in consideration of which said new corporation executed its note to said Rose Kreipke and Elizabeth Weinheimer, each, for the same amount of the note which each of them held on the partnership, which partnership notes were then surrendered and canceled. The notes thus executed by said new cor-

poration, The Indiana Pottery Company, are the notes secured in their behalf in the mortgage sued on. The facts found show that the Uhl Pottery Company had property enough to pay its debts at the time it conveyed it all to Weinheimer and Kreipke, but the assumption of the debts due to the wives of the partners made the firm of Weinheimer and Kreipke insolvent. That, however, did not destroy the consideration for the notes. Partners may waive the right to compel partnership assets to be first applied to the payment of partnership debts, and they may transfer or incumber the firm property to pay or secure *bona fide* debts of the individual members of the firm, and the transaction cannot be successfully attacked, either by a creditor or a receiver appointed by reason of the insolvency of the firm. *Johnson* v. *McClary,* 131 Ind. 105, and authorities cited; *Simmons Hardware Co.* v. *Thomas,* 147 Ind. 313. The court did not err in concluding that the notes to Rose Kreipke and Elizabeth Weinheimer were supported by a sufficient consideration. The conclusions of law stated among the facts found are void and amount to nothing. *Stalcup* v. *Dixon,* 136 Ind. 9.

The other conclusions of law, not already mentioned, we do not disturb any further than they may be qualified or affected by the conclusion we reach.

For errors pointed out by us in the conclusions of law, the judgment is reversed, with instructions to the superior court to restate its conclusions of law so as to conform to this opinion, and render judgment accordingly.