[L. A. No. 2832. In Bank.—February 25, 1913.]

## NATIONAL HARDWARE COMPANY (a Corporation) et al., Respondents, v. DAMON SHERWOOD et al., Defendants and Respondents; A. R. PHELPS, Defendant and Appellant.

MORTGAGE—NOTE SECURED NOT NEGOTIABLE INSTRUMENT—NOTICE OF MORTGAGE.—In this state, where a note is secured by a mortgage on land, both being executed at the same time, or as parts of one transaction, the note, although negotiable in form, is not negotiable in law, where the purchaser takes it with knowledge of the existence of the mortgage.

ID.—RECITAL OF SECURITY IS NOTICE TO INDORSEE.—A recital in the note that it was secured by such a mortgage is notice to an indorsee of the fact that it was so secured.

ID.—PURCHASER OF NOTE BEFORE MATURITY—INDORSEE TAKES SUBJECT TO EQUITIES OF MORTGAGOR—PARTIAL WANT OF CONSIDERATION—FUTURE ADVANCES.—A purchaser of such note before maturity, although the consideration paid therefor was the full face of the note, is not entitled to the protection which the law gives to an indorsee of a negotiable note, in good faith, for value and before maturity; and the successor in interest of the mortgagor in the mortgaged premises, unless he is estopped so to do, may set up as a defense in an action to foreclose the note and mortgage, a partial want of consideration, arising out of the fact that the payee of the note, which was given to secure future advances, actually advanced less than the face value of the note.

ID.—RECITAL OF CONSIDERATION IN NOTE—IMPEACHMENT OF CONSIDERATION OF NON-NEGOTIABLE INSTRUMENT.—A recital in a note that it was given for value received is merely *prima facie* evidence of a valuable consideration sufficient to support the promise to pay, although, since the contract is in writing, such consideration would be presumed without the aid of the recital. But neither the recital

CLXV Cal.—1          (1)

nor the presumption is conclusive upon the maker, and the consideration may always be impeached, if the instrument is not negotiable, notwithstanding such presumption and recital.

ID.—DEED OF TRUST—RECITAL OF PRIORITY OF LIEN OF MORTGAGE FOR STATED AMOUNT—MORTGAGE GIVEN TO SECURE FUTURE ADVANCES —INTENT OF PARTIES.—Where a deed of trust given to secure the purchase price of land, recites that the same was subject to the "lien of a mortgage in the sum of three thousand dollars," in favor of a person named therein to whom a note negotiable in form for that amount, secured by such mortgage, had been given, and all the immediate parties to the transaction, including the beneficiary of the trust-deed, understood that no money was loaned on the mortgage at the time of its execution, and that it was to be advanced subsequently, although such understanding was not stated in the mortgage, it must be concluded that it was not the actual intention of such parties, including the beneficiary, that the mortgage should be a valid lien at any time for a sum larger than had been advanced thereon at such time.

ID.—ASSIGNMENT OF MORTGAGE TO BONA FIDE PURCHASER FOR FULL VALUE—ESTOPPEL OF BENEFICIARY UNDER DEED OF TRUST FROM IMPEACHING AMOUNT DUE ON NOTE.—Where, however, the payee of such note, prior to its maturity, and after the recordation of the mortgage and deed of trust, assigned it for its full face value, and the assignee took it, relying upon such recital in the deed of trust, and upon a written statement of the mortgagors and trustors declaring that the mortgage was "given for value received, and that there are no offsets to the same," and without notice or knowledge that the note was given merely to cover future advances, or that the mortgagors had not received the full amount named in the note, the beneficiary of the deed of trust, after acquiring title to the land in pursuance of a sale under the power contained therein, is estopped, by reason of such recital, under the provisions of subdivisions 2 and 3 of section 1962 of the Code of Civil Procedure, from denying that the note, in the hands of the assignee, is good for the full face value thereof. This result follows, although the assignee made no inquiry, personally, in regard to the amount due on such note, of the mortgagors, or of the beneficiary, or of the trustee.

ID.—RULE OF CAVEAT EMPTOR INAPPLICABLE.—Under such circumstances, the rule of *caveat emptor,* applicable to the purchase of a non-negotiable obligation for the payment of money, does not obviate the estoppel.

ID.—RECITAL IN MORTGAGE OF PRIORITY OF ANOTHER MORTGAGE—ESTOPPEL OF MORTGAGEE.—Where a person accepts a mortgage which recites that it is subject to another mortgage on the same property, he is estopped thereby and is not allowed to defeat or impair the

other mortgage by denying its priority or validity at the time he took it to the amount of it as recited in his own mortgage.

ID.—BENEFICIARY UNDER DEED OF TRUST SIMILAR TO SECOND MORTGAGEE.—The beneficiary of the deed of trust stood in the same situation as a second mortgagee, with regard to the recital therein, and his subsequent purchase of the land under the power in the deed did not change his position in this respect.

ID.—PRESUMPTION OF FOLLOWING ORDINARY COURSE OF BUSINESS—NOTE AND LOAN PRESUMED CONTEMPORANEOUS.—In the absence of anything in the language of the recital, or in the note or mortgage to which it refers, suggesting the contrary, the assignee of the note was justified in assuming that the ordinary course of business had been followed at the time of the execution of the note, and that the loan of the money was contemporaneous therewith.

ID.—ERECTION OF HOUSE ON MORTGAGED LAND NOT NOTICE TO ASSIGNEE THAT NOTE WAS FOR FUTURE ADVANCES.—The mere fact that the assignee, before buying the note, had seen a house in process of erection on the mortgaged property, was not sufficient to impute knowledge of the fact that the mortgage was made to secure money for use in the erection of the building, or of the fact that it would not be loaned until required for payment of the cost thereof.

ID.—NEGLIGENCE OF BENEFICIARY—OMISSION TO RECITE REAL CHARACTER OF NOTE.—The beneficiary under the deed of trust, knowing that the mortgage was taken for future advances and that it was to be paramount to his claim under such deed, was negligent in not causing the recital in the deed to state that such was the character of the mortgage, and his interest should be deemed subject to the entire mortgage, in the hands of the assignee, under the principle embodied in section 3543 of the Civil Code, that "where one of two innocent persons must suffer by the act of a third, he by whose negligence it happened must be the sufferer."

APPEAL from a judgment of the Superior Court of Los Angeles County.   Frederick W. Houser, Judge.

The facts are stated in the opinion of the court.

Lloyd W. Moultrie, for Appellant.

Sheldon Borden, and George H. Moore. for Respondent, Firth.

SHAW, J.—The defendant, Phelps, appeals from the judgment.

The plaintiffs began the action to foreclose certain alleged liens upon the lot in controversy for materials furnished in the erection of a building thereon. No objection is made to the judgment with respect to these liens. The sole controversy is between the appellant, Phelps, and the defendant, Emil Firth, and the question presented is whether the principal sum of the mortgage lien held by Mrs. Phelps upon the lot is three thousand dollars, or only $1,940.67. The note described in the mortgage was for three thousand dollars, but it was given for future advances and the mortgagors received only $1,940.67 therefor. The facts are somewhat complicated and it is necessary to state them at length.

The defendant, Firth, owned the lot prior to any of the transactions involved in the case. He executed a deed of the lot to the defendant Damon Sherwood, the purchase price being one thousand eight hundred dollars. The deed was dated September 3, 1908. Under the same date, Sherwood and wife executed a deed of trust upon the lot to the Title Insurance and Trust Company, as trustee, to secure the payment of the said purchase price, in four installments, for which Sherwood executed four notes to Firth. Sherwood desired to build a house on the lot and for that purpose to borrow money by a first mortgage thereon. He arranged to borrow this money from one L. E. Jones. To accomplish the purpose, it was necessary that the deed of trust in some manner recognize the proposed mortgage as a paramount lien. For this purpose the following recital was inserted therein: ''This trust deed is given to secure the purchase price of said property, but is second and subsequent to the lien of a mortgage for the sum of three thousand (3,000.00) dollars in favor of L. E. Jones.'' On October 8, 1908, Sherwood and wife executed to Jones the mortgage on the lot purporting to secure a note of the same date from Sherwood to Jones for three thousand dollars, payable three years after date. The mortgage also provided that in case of foreclosure the mortgagors would pay the attorneys' fees of the plaintiff in the suit and that upon default in payment of the interest or of any installment of the principal, the holder of the note should have the option to declare the whole sum due immediately. The deed of trust, although dated September 3, 1908, was not fully executed by delivery until October 13, 1908, on which day both the

mortgage and the deed of trust were placed on record. It was agreed between Sherwood and Jones that the money borrowed on the mortgage should not be immediately paid to Sherwood, but should be paid over from time to time in smaller sums as needed for the proposed building. Firth was cognizant of this agreement. Sherwood thereupon proceeded to erect a building on the lot and Jones advanced him therefor sums amounting to $1,940.67, and no more. The building was completed on January 19, 1909. On November 4, 1908, Jones sold, assigned, and indorsed the said note and mortgage to the appellant, A. R. Phelps, for three thousand dollars, which she then paid to him.

At the time Sherwood and wife made the note and mortgage to Jones, they also signed and delivered to Jones a written statement declaring that said mortgage "has been given for value received, and that there are no offsets to the same." This document, and also the aforesaid recital in the deed of trust, were shown to Mrs. Phelps by Jones, at and prior to her purchase of the note and mortgage from Jones. She took the assignment and paid the three thousand dollars to Jones without any notice or knowledge of the agreement between Jones and Sherwood, or of the fact that Sherwood had not received the full amount named in the note, and she relied on said recital of the deed of trust and said statement of the Sherwoods. She made no inquiry, personally, of the Sherwoods, or of Firth, or of the trustee, in regard to the matter.

Default was made in the payment of the purchase price due to Firth, secured by the deed of trust, and thereupon the trustee, in pursuance of the power of sale contained therein, duly sold said lot to enforce payment. Firth was the purchaser at the sale and on May 22, 1909, the trustee, in pursuance thereof, executed a deed conveying the lot to him.

It appears to be settled by the decisions of this court that where a note is secured by a mortgage on land, both being executed at the same time, or as parts of one transaction, the note, although negotiable in form, is not negotiable in law, where the purchaser takes it with knowledge of the existence of the mortgage. (*Meyer* v. *Weber,* 133 Cal. 681, [65 Pac. 1110] ; *Briggs* v. *Crawford,* 162 Cal. 129, [121 Pac. 381] ; Civ. Code, sec. 1642. See, also, *Hibernia* v. *Thornton,* 127 Cal. 577, [60 Pac. 37] ; *Hays* v. *Plummer,* 126 Cal. 109, [77 Am.

St. Rep. 153, 58 Pac. 447].)    In *McDonald* v. *Randall,* 139
Cal. 246, [72 Pac. 997], the court, in deciding that knowledge
by the president of a corporation that a note negotiable in
form and secured by mortgage was without consideration,
where the note was payable to him and was indorsed by him
to the corporation, could not be imputed to the corporation
under the circumstances shown, said, in the course of the
opinion, that the note was negotiable, and upon that statement
assumed that the corporation would take it free from all
existing defenses, unless it took with notice thereof.    But the
point that the mortgage accompanying the note made it non-
negotiable was not presented upon the argument, nor dis-
cussed by the court.    The case of *Meyer* v. *Weber* was not
cited or mentioned, either in the opinion or in the briefs.    In
view of these circumstances the McDonald case cannot be
considered as a decision overruling *Meyer* v. *Weber* on that
point.    Three reasons for the doctrine were given in *Meyer*
v. *Weber.*    The first was that the mortgage there involved
provided for the payment of attorneys' fees if suit to foreclose
was instituted; a condition which destroyed the negotiability
of the note, under the provisions of section 3088 of the Civil
Code as it stood prior to the amendment in 1905.    It would
not have that effect under the section as it now is and as it
was when the note here involved was executed.    The second
reason was that the mortgage provided that upon default in
the payment of the interest due before the maturity of the
principal, the payee had the optional right to declare the prin-
cipal due immediately, which also, under section 3088, would
make a note non-negotiable.    The third reason was that in
this state, under section 726 of the Code of Civil Procedure,
a note secured by mortgage can be enforced only by fore-
closure of the mortgage, and consequently, the personal lia-
bility upon such note is contingent and dependent upon there
being a deficiency in the proceeds of the mortgaged premises
to pay the note, upon a foreclosure sale.    This, also, it was
held, introduced into the contract a condition not certain of
fulfillment within the meaning of section 3088, and renders
the contract as a whole non-negotiable.    The facts upon which
the second and third reasons are founded are present in the
case at bar and the reasons are as potent here as in the Meyer
case.    It should be remarked, however, that in the present case

and also in *Meyer* v. *Weber,* and *Briggs* v. *Crawford,* the note recited that it was secured by mortgage. The result was that no person could receive the note as indorsee without notice of the fact that it was accompanied by the mortgage. There is nothing in any of the decisions which would support the claim, should a case arise, that, in the absence of any such recital in the note, one who should purchase it for value before maturity, in good faith and without knowledge or notice of the mortgage, could not hold it as a negotiable instrument and free from any defense which the maker might have as against the payee or any previous holder.

The note being non-negotiable on its face, the result is that Mrs. Phelps, although she paid Jones the full face of the note as the price thereof, is not entitled to the protection which the law gives to an indorsee of a negotiable note, in good faith, for value and before maturity. (Civ. Code, secs. 3122, 3123, 3124.) Firth, as sucessor in interest of Sherwood, the mortgagor, may therefore avail himself of the defense of partial want of consideration, arising out of the fact that Jones did not loan more than $1,940.67 on the note, unless he is estopped to do so by the conduct of Sherwood, or by some other circumstance not depending upon the law of negotiable instruments.

The note, as signed by Sherwood, recited that it was given for value received. It is not claimed that this representation would constitute an estoppel and prevent Sherwood, or Firth as his successor, from asserting want of consideration as a defense to the note in the hands of the indorsee. It would constitute *prima facie* evidence of a valuable consideration sufficient to support the promise to pay, although, since the contract is in writing, such consideration would be presumed without the aid of the recital. (Civ. Code, sec. 1614; Code Civ. Proc., sec. 1963, subd. 39.) But neither the recital nor the statutory presumption is conclusive upon the maker and the consideration may always be impeached, if the instrument is not negotiable, notwithstanding such presumption and recital.

The court below held that the aforesaid statement given to Jones by the Sherwoods and exhibited by Jones to Mrs. Phelps to induce her to purchase the note, created an estoppel in her favor against the Sherwoods alone, preventing them from

denying that the note was good for the full amount thereof. It did not appear that Firth had any knowledge of the Sherwood statement, or of the exhibition thereof to Mrs. Phelps, or of the fact that she was induced to purchase thereby. Hence, it was held to work no estoppel against him.

The principal thing relied on by the appellant to create an estoppel against Firth is the recital in the deed of trust that said deed was subject to "the lien of a mortgage in the sum of three thousand dollars," in favor of Jones. Firth had knowledge of this deed. It does not appear that he signed it, but he was the beneficiary named therein, and the recital was inserted with his consent for the purpose of making the mortgage to Jones paramount to the interest held by the trustee for his benefit. The evidence shows, however, that all the parties to this deed understood that no money was loaned on the mortgage at the time of its execution and that it was to be advanced subsequently, as needed for the proposed building. Hence, we must conclude that it was not the actual intention of the immediate parties to the transaction, including Firth, that the mortgage should be a valid lien at any time for a sum larger than had been advanced thereon at such time by Jones.

The code declares that the recital of a fact in a written instrument, except the recital of a consideration, is conclusive between the parties thereto, or their successors in interest by a subsequent title. Also that when a party has by his own declaration, act or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act or omission, be permitted to falsify it. (Code Civ. Proc., sec. 1962, subds. 2 and 3.) Firth unquestionably had an interest in or under the deed, whether he signed it or not. By the conveyance from the trustee he became the successor in interest of Sherwood by a subsequent title. That conveyance placed him in the same position, with respect to this recital, as he would have occupied if Sherwood had conveyed the lot to him after the mortgage to Jones was recorded. So far as the mortgage lien was concerned or affected by the recital, he is bound by it as fully as if he was a party to the deed in which it was inserted.

The purpose of the recital, so far as Firth, Sherwood, and Jones were concerned, was to assure Jones that the deed of trust would be subject to the mortgage lien for whatever sums he should loan thereon. If he had continued to hold the mortgage it may be assumed that he could not have enforced it for more than the sum actually loaned by him. But Mrs. Phelps had no knowledge of the agreement that the money was to be loaned subsequently in installments as required. That agreement was not referred to in the mortgage nor placed on record and it cannot be invoked by Firth against her.

The respondent argues that the rule of *caveat emptor* applies to one who is about to purchase a non-negotiable obligation for the payment of money and that such buyer is bound at his peril to inquire into the defenses of the debtor and can occupy no better position than does the original creditor. This doctrine is well established but it does not obviate the estoppel here involved. Under the provisions of section 1962 of the Code of Civil Procedure, above recited, and under the facts we have stated, Firth occupies the position of the mortgagor, and is bound by the recital. He, therefore, comes within the third subdivision of that section, that of a person who has by his own declaration led another to believe a particular thing true, and to act upon that belief. Mrs. Phelps saw the recital and acted upon the belief it inspired, and he cannot be permitted to falsify it for his own benefit and to her detriment in the matter in which she acted. She was bound to inquire into the matter, or abide the consequences. She did inquire and she found this recital which she rightly presumed was made with the knowledge and consent of Firth. She was justified in accepting it as true and in purchasing the note and mortgage in reliance on the information it contained. Under the principle declared in the aforesaid provision of the code, Firth is estopped to deny the truth of the thing of which it informed her. The authorities are in accordance with the code upon this proposition. Where a person accepts a mortgage which recites that it is subject to another mortgage on the same property, the rule is that he is estopped thereby and is not allowed to defeat or impair the other mortgage by denying its priority or validity at the time he took it to the amount of it as recited in his own mortgage. (*Old National Bank* v. *Heckman,* 148 Ind. 507, [47 N. E. 953]; *Hardin* v. *Hyde,*

40 Barb. (N. Y.) 435, *Gow* v. *Collin etc. Lumber Co.,* 109
Mich. 52, [66 N. W. 676]; *Bronson* v. *Railroad Co.,* 69 U. S.
310, [17 L. Ed. 725]; *Central T. Co.* v. *Columbus etc. Co.,*
87 Fed. 828.) There are also many cases holding that the
purchaser who takes the property by a deed which recites that it
is subject to a mortgage thereon, is estopped to assert the in-
validity of the mortgage, or any defense thereto which existed
at the time between the mortgagor and the mortgagee. This
is held in cases where it does not appear that the vendor
of the land had deducted the mortgage debt, as recited, from
the price of the property agreed on between him and the
vendee, and it appears to be the rule applicable in any case
where the land is taken subject to a mortgage recited in the
deed. (*Cornell* v. *Corbin,* 64 Cal. 200, [30 Pac. 629], which
concedes but does not decide the point; *Freeman* v. *Auld,* 44
N. Y. 50; *Green* v. *Camp,* 13 Mass. 515, [7 Am. Dec. 169];
*Shufelt* v. *Shufelt,* 9 Paige, (N. Y.) 145, [37 Am. Dec. 381].)

Where the recital is of such a nature that it shows an intent
to declare that the second mortgage is to be taken subject only
to so much of the sum named in the first mortgage as may be
justly owing thereon, the second mortgagee is not estopped
from showing that the first mortgage is good only for a part
of its face value. (*Bennett* v. *Bates,* 94 N. Y. 171.) Firth,
as the beneficiary of the trust, clearly stands in the same
situation as a second mortgagee, with regard to the recital.
The subsequent purchase under the power in the trust-deed
does not change his position in this respect. If the recital
could be reasonably construed to imply by its terms that the
lien of the mortgage to Jones was for an amount less than
three thousand dollars, the principle just stated would be
applicable. But we find nothing in its language, or in the
note and mortgage to which it refers, which suggests the idea
that the money was not loaned on the mortgage at the time
of its execution, or that it was made to secure future advances,
or that the loan was to be made in installments. In the
usual course of business of giving a mortgage, the loan of
the money and the execution of the mortgage are practically
contemporaneous. The presumption from the facts shown of
record is that the usual course of business was followed and
that the money was all loaned at the time. (Code Civ. Proc.,
sec. 1963, subds. 13 and 20.) Mrs. Phelps was therefore jus-

tified in relying upon the recital as a statement that three thousand dollars had been loaned upon the security of the mortgage.

It appears that before buying the note she had seen the lot and the house in process of erection thereon. It is argued that this is sufficient to impute to her knowledge of the fact that the mortgage was made to secure money for use in the erection of the building, and of the fact that it would not be loaned until required for payment of the cost thereof. We see no force in this argument. There is not, so far as we are advised, any custom of making loans in that manner sufficiently established to make it the usual course of business or to require a prudent person to inquire, in such a case, as to facts concerning such loan, upon becoming aware that a house was being constructed on the lot.

Another consideration leads us to the conclusion that Firth's interest should be deemed subject to the entire mortgage in the hands of Mrs. Phelps. "Where one of two innocent persons must suffer by the act of a third, he by whose negligence it happened must be the sufferer." (Civ. Code, sec. 3543.) Firth knew that the mortgage was taken for future advances and that it was to be paramount to his claim under the deed of trust. But he consented to the insertion of a recital in that deed which did not disclose the fact that it was taken for money to be thereafter loaned, but which implied that the loan was completed. He thereby put it in the power of Jones to exhibit the recital to a purchaser of the note and to induce the belief that the note was good for its face value, as well as prior to the deed of trust, and by that means to sell it for its face value before he loaned the whole of the money upon it. By simply causing the insertion in the recital of the words "to be hereafter advanced," Firth could have made it speak the truth, he would thereby have protected himself against any such purchaser, and in all probability the sale of the mortgage to Mrs. Phelps would not have been made. He was negligent in thus allowing Jones to possess the means of deceiving others. The deceit was accomplished by Jones and it happened through this neglect of Firth. Hence, he, rather than Mrs. Phelps, the deceived person, must suffer the injury.

The respondent contends that the facts involved in *Briggs* v. *Crawford*, 163 Cal. 129, [121 Pac. 381], were substantially the same as in this case and that it sustains the proposition that there is no estoppel. The party there entitled to assert the estoppel, if any existed, was Crawford, the defendant. It was necessary for him to plead it in order to obtain any benefit from it. The answer pleaded an estoppel by reason of the original conveyance of the Briggs Real Estate Company to the mortgagor and by reason of the execution of the mortgage, and it did not plead the deed of trust, or any recital therein, as an estoppel in his favor or at all. The terms of the recital do not fully appear. Crawford did not see it or rely upon it when he purchased the mortgage, and the opinion does not discuss or mention such recital or state of facts upon which it could be based. Hence, it does not constitute an authority upon the subject. The court below erred in holding that Firth was not estopped and that Mrs. Phelps could not assert a lien for the full face of the mortgage. No other questions are presented.

The judgment is reversed.

Angellotti, J., Sloss, J., Henshaw, J., Melvin, J., and Lorigan, J., concurred.