[Civ. No. 3167. First Appellate District, Division One.—December 31, 1919.]

## EDWIN H. BURROWS, Respondent, v. WILLIAM DURFLINGER et al., Defendants; C. S. MAUPIN, Appellant.

[1] MORTGAGES—PRIORITY OVER DEED OF TRUST—DILIGENCE OF PARTIES—FRAUD.—Where a money lender, before making a loan to be secured by the assignment to him of a mortgage on certain real property, examines the property covered by the mortgage, has the title thereof brought down to date showing the mortgage to be a first lien upon the property, causes the affidavit of the mortgagor to be taken showing that no concealed equities exists between her and the mortgagee, and causes the whole transaction to be handled by a corporation whose business it is to negotiate and consummate such dealings, it cannot be said that his failure to make inquiries concerning the deed to the mortgagor and the trust deed from her in favor of her grantor, which recites that it is subject to such mortgage, constitutes gross negligence amounting to constructive fraud as against the grantor of the mortgagor, though such inquiry would have revealed to him the fraud perpetrated by others on such grantor.

[2] ID.—ESCROW INSTRUCTIONS—RECITALS IN DEED OF TRUST—ESTOPPEL TO DENY PRIORITY.—Where the owner of property sells it to another, accepting a part payment down and a deed of trust for the balance, and agrees with the purchaser that a first mortgage for a given amount might be placed upon the property, there being a general understanding that the purchaser is to construct a residence upon the lot, and the escrow instructions to the title company signed by such vendor, in effect, plainly directs that the trust deed should be made subject to the mortgage in question, and such vendor accepts the trust deed containing such recital, he will be estopped to defeat or impair the mortgage by denying its priority, in the absence of fraud on the part of the holder thereof.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge. Reversed.

The facts are stated in the opinion of the court.

L. G. Shelton and A. W. Ashburn for Appellant.

Muhleman & Crump for Respondent.

KERRIGAN, J.—This is an appeal by the defendant Maupin from a judgment in favor of plaintiff.

The transaction giving rise to the litigation grew out of a plan of defendant William Durflinger, who was engaged in the business of building and selling residences, and whose procedure thereunder usually was to purchase a vacant lot, make an initial payment thereon, and borrow upon a first mortgage money with which to erect a building upon the lot, giving to his vendor a trust deed to secure the balance of the purchase price, said trust deed being made subject to said mortgage. In the case at bar said defendant purchased a certain lot in the city of Los Angeles from the plaintiff Burrows for the sum of two thousand four hundred dollars, upon which he paid him in cash four hundred dollars and caused to be executed in his favor, as will hereafter appear, a trust deed to secure the balance, the plaintiff agreeing that a first mortgage for four thousand dollars might be placed upon the property. There was also a general oral understanding between Durflinger and the plaintiff that the former would build a residence upon the lot, without, however, its cost being specified or when it should be built. Durflinger caused a note for the balance of the purchase price of said lot to be executed by his daughter, the defendant Faye Durflinger, and he also caused the deed thereto to be taken in her name as grantee, whereupon she executed a mortgage upon the property in favor of her brother, the defendant Neil Durflinger, as security for a purported loan of four thousand dollars. She also executed a trust deed to the plaintiff as security for the payment of two thousand dollars, the balance of the purchase price of the lot above mentioned, which deed contained a recital that it was subject to a mortgage of four thousand dollars. The deed from the plaintiff to Faye, the mortgage from Faye to Neil, and the trust deed from Faye to the plaintiff were all executed on December 6, 1915, and recorded on December 15th of the same year. On February 26, 1916, William and Neil Durflinger borrowed from George D. Abrams $1,750, assigning to him as collateral security therefor the aforesaid mortgage of four thousand dollars. At that time it appears that a house was in course of construction upon the lot. Subsequently, on April 16,

1916, the appellant Maupin loaned to William and Neil Durflinger upon their joint note the sum of $2,750, part of which was applied to the repayment to Abrams of his aforesaid loan, and took from Abrams an assignment of the four thousand dollar mortgage as collateral security for appellant's loan. At that time said building was nearly completed, and the value thereof was estimated by Maupin at two thousand dollars. In making the loan Maupin placed the $2,750 with a certain title company in escrow, with instructions to pay the money to William and Neil Durflinger upon a continuation of the certificate of title showing said mortgage of four thousand dollars to be a first lien upon the property, together with an affidavit of the maker of said mortgage that she had received the consideration mentioned therein and that there was no offset or defense to the obligation secured thereby. An affidavit to that effect was obtained from Faye, and the title company, upon examination of the records, having concluded that the mortgage was a first lien upon the property, consummated the transaction. Maupin's escrow instructions further stated: "It is understood the property is subject to two thousand dollars trust deed which is second to the four thousand dollar mortgage; therefore no mortgage statement is needed in said trust deed." The plaintiff was represented in the transaction from its inception by a certain real estate concern through which the sale was negotiated, and a representative of that concern was with him when he executed the papers necessary to consummate the transaction. Nevertheless, the plaintiff testified that when he signed those documents he did not read them, and did not know that the trust deed was to be subject to the mortgage; that he knew that there was to be a mortgage on the property to raise money to erect a house thereon, but understood that the mortgage was to be subordinate to the trust deed, and that he did not learn to the contrary until he received the deed after its recordation.

William Durflinger failing to complete the construction of the house upon said lot, the plaintiff brought this action for the purpose of having the mortgage declared null and void and canceled as to him and to have the trust deed declared to be superior to the lien thereof.

The trial court found that the conveyance from the plaintiff was procured, and the trust deed and mortgage executed, as a part of a fraudulent scheme; that the mortgage was void as to plaintiff as to the excess thereof over the value of the building erected upon the lot, and that Maupin took an assignment of the mortgage with notice that the mortgage was without consideration and fraudulent as to the plaintiff.

Our examination of the record leads us to the conclusion that with respect to the appellant Maupin the findings of the court are not sustained by the evidence.

Faye Durflinger testified that she never met Maupin. Her brother Neil testified to the same effect. Their father admitted that he received money from Maupin on the loan, and said: "I did not have any conversation with Mr. Maupin as to how I obtained the title to that property. I never did tell Mr. Maupin in what manner the deed was made to Faye Durflinger. He never made any inquiries as to how she came in possession of the deed. He was never told in my presence." Maupin testified that he did not know Faye, and never had any conversation with her, nor had Neil ever told him how he or his sister came to be in possession of the property; that there was no understanding between the Durflingers and himself except what was contained in the escrow instructions. He said: "I gave my check for the full amount on each loan to the title company, and gave instructions to complete the deal and turn over the money after they had guaranteed the title." Neil Durflinger said he turned over to his sister the money received from Maupin. "The check was payable to me and I transferred it to my sister Faye Durflinger. I received the consideration for the mortgages in the Kibbee case."

[1] After a careful examination of the record we are unable to discover any substantial evidence tending to show that Maupin was guilty of any wrong-doing in the premises. Upon the exposure of the fraud which had been practiced upon the plaintiff by the Durflingers it became clear that if Maupin had made further investigation into the transaction, or had inquired of the plaintiff concerning the particulars thereof, he doubtless would have learned of the fraud; but at the time he took the assignment of the mortgage nothing had occurred to arouse his suspicion that the transaction

was irregular or fraudulent in any respect. It appears that he had done all that years of experience as a successful money lender had taught him was necessary or prudent to do in the matter to make a safe loan. He had examined the property, had had the title thereof brought down to date; and the note secured by the mortgage being non-negotiable (*Meyer* v. *Weber*, 133 Cal. 681, [65 Pac. 1110], he caused the affidavit of the mortgagor to be taken showing that no concealed equities existed between her and the mortgagee, before he would make the loan, and he caused the transaction to be handled by a corporation whose business it was to negotiate and consummate dealings of this character. It is apparent, too, that at least one other business man had been deceived by the Durflingers, for the appellant's assignor, who had made a loan on the security of the same mortgage, had failed to discover the fraud and deceit attaching to it. He, like the appellant, had doubtless assumed that the recitals in the trust deed were valid and binding on the plaintiff, and that he was required to make no inquiry into the validity of the transaction between plaintiff and his grantee. Certain it is that the appellant acted with infinitely greater care and caution in the matter than did the plaintiff, who even failed, according to his testimony, to read the documents executed in the transaction, and it is his own laxity which has given rise to this suit.

It is not argued, nor could it well be, that under the evidence Maupin and his codefendants had entered into a conspiracy to defraud the plaintiff, or that Maupin was to receive any benefit from the transaction other than the interest of one per cent per month on the amount of his short-time loan. In the last analysis the plaintiff's argument amounts to no more than an assertion that Maupin was guilty of negligence in failing to make inquiries concerning the deed from the plaintiff to Faye Durflinger and the trust deed taken by him, but even if this were true, it does not constitute gross negligence amounting to constructive fraud.

[2] It may be added, finally, that the plaintiff signed escrow instructions which, in effect, plainly directed that the trust deed should be made subject to the mortgage in favor of Neil Durflinger, and he accepted the trust deed containing such a recital. Under these circumstances, in the ab-

sence of fraud on the part of Maupin, the plaintiff is estopped to defeat or impair the mortgage by denying its priority. In *National Hardware Co.* v. *Sherwood*, 165 Cal. 1, [130 Pac. 881], it was held: "Where a person accepts a mortgage which recites that it is subject to another mortgage on the same property, he is estopped thereby and is not allowed to defeat or impair the other mortgage by denying its priority or validity at the time he took it to the amount of it as recited in his own mortgage," and that "The beneficiary of the deed of trust stood in the same situation as a second mortgagee, with regard to the recital therein, and his subsequent purchase of the land under the power in the deed did not change his position in this respect." And in the same case it was said: "In the absence of anything in the language of the recital, or in the note or mortgage to which it refers, suggesting the contrary, the assignee of the note was justified in assuming that the ordinary course of business had been followed at the time of the execution of the note, and that the loan of the money was contemporaneous therewith."

It is obvious, of course, that what the plaintiff should have done was to cause a declaration to be included in the recital in the deed that the purpose of the mortgage was to raise funds for the construction of a building on the lot, and the deed might also have provided that the money to be raised on the mortgage should be advanced as the proposed building progressed. If this had been done, the plaintiff would have protected himself and the assignees of the mortgage. Plaintiff was negligent in thus allowing Faye Durflinger to possess the means of deceiving others. When one of two innocent persons must suffer, he by whose negligence it happened must be the sufferer.

It follows that the judgment must be reversed, and it is so ordered.

Waste, P. J., and Wood, J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 26, 1920.

All the Justices concurred.