[Civ. No. 9344.  First Appellate District, Division Two.—March 1, 1934.]

HAMMOND LUMBER COMPANY (a Corporation), Respondent, v. JOHN ROUBIAN et al., Defendants; BAY CITY BUILDING AND LOAN ASSOCIATION (a Corporation) et al., Appellants.

Charles I. Baker, Gilbert E. Harris and Arch H. Vernon for Appellants.

Edgar C. Smith for Respondent.

BURROUGHS, J., *pro tem.*—This is an action to foreclose a mechanics' lien. Judgment went for the lien claimant's successor in interest. The defendants Bay City Building and Loan Association, Fidelity and Guaranty Loan Company and Southern Investment Company, all three corporations, have appealed from the judgment.

The record has been brought up under the alternative method. It is claimed by the appellants that the trial court erred in finding that a certain trust deed through which the

appellant Southern Investment Company claims title to the real property in suit was subject to the mechanics' lien. This contention is based upon the following uncontroverted evidence: On January 16, 1930, the defendant Barbara C. Roubian, acting through her co-defendant John Roubian, who was her husband, entered into an agreement with the former plaintiff, the Male-Knudson Lumber Company, to purchase certain building material to be used in erecting a building upon the parcel of land described in the complaint. On January 20, 1930, a building loan contract was executed by Mrs. Roubian with Smith & Sons, Inc., to secure a loan of $9,000 to be used for the building above referred to, which loan was to be secured by a trust deed on the above-mentioned property. On the same date she executed the note for said money and the trust deed to secure the same. On January 25, 1930, she received the deed to said real estate which was the source of her title thereto. It appearing to the interested parties that the $9,000 to be obtained through the first deed of trust would be insufficient to complete the building, Mrs. Roubian, on the last-named day, procured another loan from another party in the sum of $3,000 and executed a second trust deed on the property which contained a clause making it subject and subsequent to the first trust deed. The second deed of trust was not acknowledged until February 5, 1930. On the following day there was filed for record in the official records of Los Angeles County, the county where the property is situated, the deed through which Mrs. Roubian deraigned her title, also the first trust deed and the second trust deed. Two days later the Male-Knudson Lumber Company began to furnish building material on the premises in accordance with the contracts of January 16, 1930, and thereafter continued to do so until April 10, 1930, when their part of the contracts was completed. It further appears without conflict that the first trust deed was properly acknowledged by Mrs. Roubian, but the notary public erroneously wrote the venue of the notarial certificate as the county of San Diego instead of the county of Los Angeles. This deed, after having been recorded, was on February 15, 1930, sent by the county recorder to the defendant, Bay City Building and Loan Association, the beneficiary named in the deed and on February 19, 1930, said company had the certificate of acknowledgment cor-

rected by the notary to conform to the facts and had the deed recorded on February 20, 1930. It also appears by stipulation that both the loan agreement and the first deed of trust were delivered on January 20, 1930, the day of their execution. Guy R. Male, an officer of the Male-Knudson Lumber Company, who on January 16, 1930, signed the material contracts for his company, testified that the contracts with Mrs. Roubian had been obtained through one of their salesmen; that he, Male, knew on said date that there was a first construction loan in this case for $9,000 or was to be one; that he knew his company was taking as part payment for their material a beneficial interest in a paper secured by a trust deed on the property; that he was informed such interest would be a second or subsequent trust deed; that he was not informed of the amount of either. Referring to the contracts for material the witness testified in part as follows: ''Q. Calling your attention to the Exhibit 3, and particularly the item marked '5th Draw' at about the center of the first page of this exhibit, I call your attention to that item '$75 Int. in T. D.', which is part of the payment to be made for material (indicating document). Will you explain that item to me? A. That was a beneficial interest in a paper that was secured by a trust deed on this property. Q. So that you were taking, as a part payment, a beneficial interest secured by a trust deed on this property? A. Yes. Q. And were you informed whether that would be a first, second or third trust deed? A. I was informed it would be a second.'' The witness was further informed that such interest would be subsequent. G. G. Wyatt had control of the negotiations on behalf of the Control Engineers, a company which appears to have had general supervision and control of the construction and he testified that he signed the contracts on behalf of his company and they were signed by Mr. Male on behalf of the Male-Knudson Company; that the contracts were prepared in the office of the Control Engineers and signed on January 16, 1930; that the terms of the contracts were discussed; that he could not recall just what was said at that time, but that it was understood that there was a first trust deed against the property for a construction loan and that he was sure Mr. Male was informed of that and they discussed the second trust deed. It was also stipulated that the second trust

deed recites that it is subject to a first trust deed in the amount of $9,000. It was further stipulated that by proceedings regularly had for that purpose, the property was sold to the defendant, Southern Investment Company, through a sale under the first trust deed.

Under the foregoing evidence the decision of this appeal depends upon the construction to be placed upon section 1186 of the Code of Civil Procedure, which reads as follows: "The liens provided for in this chapter (mechanics, builders and materialmen) are preferred to any lien, mortgage, deed of trust, or other incumbrance, upon the premises and improvements to which the liens provided for in this chapter attach, which may have attached subsequent to the time when the building, improvement, structure, or work of improvement in connection with which the lien claimant has done his work or furnished his material, was commenced; also to any lien, mortgage, deed of trust, or other incumbrance of which the lien holder had no notice, and which was unrecorded at the time the building, improvement, structure or work of improvement in connection with which the lien claimant has done his work or furnished his material was commenced."

It is clear that due to the faulty notarial certificate attached to the first deed of trust, until the corrected certificate was attached thereto and the document re-recorded, the deed was not constructive notice of its contents. Indeed, we understand that appellants concede such to be the case. In any event such is the correct rule of law. (See sec. 1186, Code Civ. Proc., vol. 1; Cal. Jur., pp. 229–254; 22 Cal. Jur., p. 603.) There was therefore no constructive notice to the lienholder of the first trust deed at the time the material was delivered on February 8, 1930.

The next question to be determined is whether, under the above evidence, the Male-Knudson Lumber Company had actual notice of the existence of the first trust deed when they commenced furnishing the material on the premises. It will be observed that on January 16, 1930, the day the contracts to furnish material were signed by Mr. Male and the other interested parties, Mr. Male knew there was a first construction loan of $9,000, or there was to be one; that he knew his company was taking as part payment for their bill of material a beneficial interest in a second trust

deed, and he knew such interest was second and subsequent to the first trust deed. It is also recited in the second trust deed that it is subsequent and subject to a first trust deed for $9,000. Mr. Wyatt's testimony discloses that the subject matter of both the first and second trust deeds were discussed with Mr. Male. It appears that the first deed of trust was actually made and delivered on January 20, 1930, almost three weeks before any material was furnished. In substantiation of the contention that the foregoing evidence sustains the finding of the court, that the Male-Knudson Lumber Company had no notice of the existence of the first trust deed, respondent cites *J. & W. C. Shull* v. *Brooke,* 107 Cal. App. 88 [289 Pac. 885]. There is, however, a distinction between the cited case and the one at bar. In the cited case the court holds that whether or not the lien claimant had actual notice of the existence of a trust deed, rested upon a conflict of evidence and therefore the finding upon that question could not be disturbed. It was further urged in that case that mere knowledge by a lien claimant that the owner was compelled to finance a building operation was sufficient to put the lien claimant upon inquiry to ascertain whether or not the property was chargeable with any lien. However, the court held that such contention could not be upheld. To the same effect is *National Hardware Co.* v. *Sherwood,* 165 Cal. 1, 11 [130 Pac. 881].

It is further claimed by respondents that all the evidence in the case at bar merely discloses notice in advance that there was to be a trust deed or building loan on the property and this was insufficient notice under section 1186 of the Code of Civil Procedure of an unrecorded encumbrance upon the property and cite in support thereof *Hardy* v. *Frey,* 49 Cal. App. 551 [196 Pac. 92], and *J. & W. C. Shull* v. *Brooke, supra.* Again we think there is a distinction between the cited cases and the one at bar. In *Hardy* v. *Frey,* the dispute was between the holder of a mortgage lien and the lien of a contractor. The mortgage was delivered for record four days after the contractor entered upon the property and commenced work. Prior to commencing work the contractor knew the mortgage had been signed and acknowledged. It was held by the court that the mechanics' lien took precedence over the mortgage lien. Such conclusion was reached because there was no evidence in response

to an affirmative defense of the answer that the mortgage had never been delivered. Delivery was, of course, indispensable to the validity and operation thereof. What has previously been said concerning the case of *J. & W. C. Shull* v. *Brooke, supra,* as to what constitutes notice, applies with equal force to this point. The case of *Keeling Collection Agency* v. *Penziner,* 123 Cal. App. 296 [11 Pac. (2d) 24, 25], is similar in its facts to the case at bar. There the lien claimants had been told by the owner that "he had his loan" of $150,000 from the West American Finance Company and the builder testified that the owner had told him "that he had a building loan". There was also a clause in the building contract in that case as follows: "This, a copy not to be recorded or used till building loan is recorded." It was there held that the trust deed for the building loan took preference over the mechanics' lien, because of the written agreement last referred to. Comparing the case last cited with the case at bar, in the case at bar, Mr. Male testified that he knew there was a first construction loan of $9,000 or there was to be one; that he knew his company was taking as part payment for their material a beneficial interest in a second trust deed which would be second or subsequent to the first trust deed of $9,000. It is true that there is no written statement as in *Keeling Collection Agency* v. *Penziner, supra,* that the copy was not to be recorded or used until the building loan had been recorded, yet the fact that the material was not furnished until two days after the instruments were all filed for record is persuasive that such was the intention. As stated in *National Hardware Co.* v. *Sherwood, supra,* at page 9, "Where a person accepts a mortgage which recites that it is subject to another mortgage on the same property, the rule is that he is estopped thereby and is not allowed to defeat or impair the other mortgage by denying its priority or validity at the time he took it to the amount of his own mortgage." In the case at bar, before the respondent had delivered any material he had accepted an interest in a second trust deed, which recited that it was taken subject to the first one. We think the foregoing evidence conclusively shows that when material was first delivered on the ground the Male-Knudson Lumber Company had actual knowledge of the existence of the first deed of trust.

162

■ It is a further contention that the first trust deed was not delivered until February 19, 1930, when it was legally recorded. However, as heretofore stated, it appears in the stipulation of the parties that it was actually delivered on January 20, 1930. If this were not sufficient to show a delivery before any material was furnished, no other reasonable construction that it was delivered could be placed upon the evidence that it was delivered to the county recorder of Los Angeles County for recordation on February 6, 1930, two days before any material was furnished and it was never returned to the grantor. ■ Neither does the recital in the deed itself that the "Trustee accepts these trusts when this deed of trust, duly executed and acknowledged, is made a public record as provided by law," delay the date of delivery. Indeed, it has been held that the assent of the trustee is not necessary to the validity of the deed. (25 Cal. Jur. 30, 31; *Smith* v. *Davis,* 90 Cal. 25 [27 Pac. 26, 25 Am. St. Rep. 92] ; 41 C. J. 429.) ■ It is also settled law that where a trust deed has been executed and delivered as security for the payment of money, and the trustor had no title to the property conveyed and title is subsequently secured by the trustor, the trust deed, even though unrecorded, takes precedence over a mechanics' lien for material thereafter furnished by a materialman who had notice of the unrecorded trust deed. (*Keeling Collection Agency* v. *Penziner,* 123 Cal. App. 296 [11 Pac. (2d) 24].)

■ Respondent further contends that the entire loan fund as set forth in the first trust deed constituted an optional advance because under certain conditions the lender could not be compelled to advance the money and could stop payment. As we understand the cases cited, none of them are authority for the proposition that where, in a case like this, the borrower has fully performed on his part, the advances to be made under the agreement are optional with the lender.

■ Respondent claims that the equities of the case are with it. It seems to us, however, that a technical error of the notary public gave to plaintiff an opportunity to question the right of defendants to enforce their security for a debt justly due them and that the equities of the case are with the defendants.

We think that what we have already said is decisive of the case and the judgment should be reversed. It is so ordered.

Spence, Acting P. J., and Sturtevant, J., concurred.